Cohn, J.
The indictment charged appellant Peter Spinello, defendant John Principe, and “ John Doe ” with the crime of robbery in the first degree. “ John Doe ” was never apprehended and the trial proceeded against the other two defendants. At the close of the People’s case the indictment against defendant John Principe was dismissed, but the case went to the jury against Spinello as the remaining defendant.
On April 25, 1947, according to the testimony of the People’s witnesses, at about eleven o’clock in the morning, two men walked into premises occupied by the Cosmic Radio Corporation in a loft building located at East 135th Street in the county of Bronx. One of them, thereafter identified as appellant Spinello, remained at the door of the loft and the other, described as “ John Doe ”, inquired for Nathan Hyman, the complaining witness. After Hyman was pointed out, this intruder asked him to step into the office, then took a gun from his pocket, saying “ This is a holdup.” He compelled complainant to face the wall. A young lady employed as a bookkeeper, who was seated at a desk in the office, saw and heard what took place there. First the robber demanded the payroll and when told it had not yet arrived he made a hasty but futile examination of the drawers of the desk in the office. Thereupon he searched the complaining witness and took from his person $400 in cash in ten-and twenty-dollar bills. He then told complainant to accompany him through the front door of the loft and to act as though they were conversing in a friendly way. As they approached the door Spinello, who was standing there, joined them, at the same *714 time producing a gun from Ms pocket. Hyman got a look at Spinello and saw Mm for about a minute.
Together with the complainant the intruders walked downstairs and then up two flights. On the way up one of them pulled a ring from the finger of complainant. When Hyman protested, he was struck on the back of the ear with the butt end of a revolver. At this point, a noise like the slamming of a door frightened the two robbers, who after warning complainant to make no outcry, ran down the stairs towards the street. As they were leaving the building they passed the foreman of the factory, who observed ohe of them putting away a gun. This man, according to the foreman’s testimony, resembled Spinello. The complaining witness and the foreman thereupon hastened to a window of the building facing the street and observed the two men fleeing from the main doorway and hurriedly enter a black Chevrolet coupe, the door of which was open. The car got into motion immediately and while it was gaining momentum, its door was closed. Both complainant and the foreman noted the number of the license plate on the veMcle and one of them wrote it down. Immediately after the holdup they gave the police a description of the car and the license number.
Three hours later, in downtown Manhattan, a police officer, Dudley Thompson, noticed two men, Principe and Spinello, in an automobile answering the description and bearing the license number reported by Hyman. Defendant Principe was at the driver’s seat and appellant Spinello was seated alongside of Mm. Officer Thompson covered them with his revolver and placed them under arrest. When searched at the police station Spinello was found to have on his person a wallet containing a registration of the Chevrolet automobile in the name of one Angelo Lubovia of 196 Elizabeth Street, New York City. The officer also found in Spinello’s possession $90 in ten-dollar bills. When questioned by the arresting officer, Spinello disclaimed all knowledge of the robbery and stated that on that morning he had gone to meet his friend Principe at the latter’s home in The Bronx; that he had travelled to The Bronx by train and had gone downtown by train; that he had obtained the use of the automobile in which he was found when arrested from one of the neighborhood boys named Frankie whose last name he did not remember. At the request of this policeman Spinello wrote the name Angelo Lubovia eight times on a sheet of paper and also printed some words. Upon comparing the signature “ Angelo Lubovia ” on the registration certificate and appel *715 lant’s writing on the sheet, the officer asked. Spinello if he had not signed the registration certificate with the name Angelo Lnbovia. This Spinello denied.
Another police officer, Detective John Lloyd, saw appellant Spinello and Principe at the Elizabeth Street station on the day of their arrest and there Spinello told Lloyd that he had been in Principe’s home at 158th Street in The Bronx that morning at about nine o’clock; that he had gone up in the Chevrolet car; that Principe was in bed; that he waited until Principe had dressed and that they then entered the car and he drove downtown with Principe. He denied, however, being in the neighborhood of 135th Street and the Boulevard that morning. Spinello told Detective Lloyd that he was not working at the time of his arrest and that the money found on him had been won at gambling.
Officer Perrill testified that on the day of the arrest he went to 196 Elizabeth Street, made inquiries for Angelo Lubovia, found no one by that name living at that address, and after an extended investigation was unable to discover any person by such a name or anyone who knew a person by that name.
Following the arrest of appellant Spinello and defendant Principe, Nathan Hyman, the complaining witness, saw them on the same day at the Elizabeth Street police station and indicated Spinello as one of the participants in the robbery. When testifying at the trial he identified Spinello on direct examination as one of the robbers, but he also added, ‘ ‘ 1 am not sure, after three years. I thought he was smaller than he is, as a matter of fact.” In response to questions put to him by the court he reiterated that about 6:00 p.m. on the day of the hold-up at the Elizabeth Street station he identified Spinello as one of the two men who had assaulted and robbed him. On cross-examination he stated that he could not swear Spinello was the man he had seen in his place of business.
Appellant did not take the stand and called no witnesses in his behalf.
Upon the foregoing evidence the People contend that they established the guilt of appellant beyond a reasonable doubt. Appellant, on the other hand, urges that the evidence was insufficient to warrant submission of the case to the jury.
We think there was ample proof to sustain the conviction of appellant of the crime charged. Though Hyman testified on cross-examination that he could not positively swear that appellant was one of the robbers, on direct examination he did *716 testify that a few hours after the commission of the crime he had identified appellant Spinello at the police station as one of his assailants. While ordinarily a party may not corroborate or fortify his own witness by showing that on previous occasions he made similar statements, since 1927, as a result of legislation in this State, it is entirely proper to prove that at a former time the witness recognized and declared the present accused to be the person who committed the crime. Section 393-b of the Code of Criminal Procedure (added by L. 1927, ch. 336) reads as follows: “ When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification.” This legislation was adopted on the recommendation contained in the first report of the Crime Commission of the State of New York, sometimes referred to as the Baumes Crime Commission. The report pointed out (p. 71): “ It sometimes happens that on the actual trial of a criminal because of the fact that he has changed his appearance — as is often done in the criminal world — has either grown a beard, shaved off a mustache or wears spectacles when he didn’t before, or adopts some other device or change in his appearance, that a person who had picked him out in the ‘ line-up ’ at the time of his arrest, or identified him as the man whom he saw at the scene of the crime in question, is quite unable to identify him as the same man some months later, because of this changed appearance, as well as because of the lapse of time.” (Report of the Crime Commission, State of New York, submitted February 28, 1927; N. Y. Legis. Doc., 1927, No. 94.) [Emphasis ours.]
In 4 Wigmore on Evidence [3d ed., § 1130] there is a discussion of the desirability of the rule indicating that -it is for the protection of the accused as well as being of assistance to the prosecution. In fact, Wigmore goes further and suggests that not only should the identifier be allowed to testify but as well the witnesses to the identification.
There was an interval of about three years between the hold-up and the trial. It is of course a well known fact, that time dims the recollection and that when there is a long delay witnesses frequently find themselves unable to testify to facts which were previously clear in their minds. If the method of proof employed here were not to be permitted, one positively identified shortly after the commission of a crime might well gain immunity from prosecution and punishment simply because the lapse of time may have partially effaced the criminal’s *717 image from the mind of the witness (see Underhill on Criminal Evidence [4th ed.], p. 172).
The circumstances of the prior identification in this case might have been fully explored but appellant did not choose to avail himself of the privilege. At the trial, there was no claim made that the man identified by the complaining witness at the police station within a few hours after the robbery was not in fact appellant Spinello nor does appellant make any such argument on this appeal.
In addition to the testimony of the complaining witness the evidence shows that the appellant Spinello was found within three hours after the robbery in the very automobile in which the robbers made their escape. To the police he made two contradictory statements with respect to his meeting Principe on the morning of the crime.
Moreover, Spinello’s handwriting of the signature “ Angelo Lubovia ” as obtained by Officer Thompson showed a striking resemblance to the signature “ Angelo Lubovia ” appearing on the registration certificate in possession of Spinello at the time of his arrest. The jury, accordingly, reasonably might find that the registration certificate of the car in the name of Angelo Lubovia, who was an unknown person, was obtained by Spinello for the purpose of concealing that he was the true owner of the car used to effect escape for the perpetrators of the robbery. Furthermore, Spinello, who was out of work at the time of his arrest, was found to have $90 in ten-dollar bills in his possession, which money he said he had won in gambling, but it will be recalled that the complaining witness testified that the $400 that had been taken from him that morning was in ten- and twentvdollar bills.
As against all of this testimony there was not the slightest contradiction from any source nor was there any proof offered by this appellant through the testimony of any witness as to his exact whereabouts at the time of the commission of the crime. “No evidence was offered by defendant, no fact controverted except by cross-examination and, consequently, nothing remained for the jury except the function of testing the credibility of the People’s witnesses.” (People v. Clougher, 246 N. Y. 106,110.)
The appellant was accorded a fair trial. The charge of the court upon the law, to which there whs no surviving exception, was complete. The guilt of the appellant of this serious crime in our opinion was clearly established.
The judgment of conviction should accordingly be affirmed.